IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

TIMOTHY WILLIAMS,

                Plaintiff,

      v.                               Civil Action No.
                                          9:06-CV-00936 (GLS/DEP)

KENNETH PERLMAN, *et al.,*

                Defendants.

_____

APPEARANCES:               OF COUNSEL:

FOR PLAINTIFF:

TIMOTHY WILLIAMS, *Pro Se*
326 E. 34th Street
Apt. 2C
New York, NY  10016

FOR DEFENDANTS:

HON. ANDREW M. CUOMO       SENTA B. SIUDA, ESQ.
Attorney General of the State     Assistant Attorney General
of New York
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

    Plaintiff Timothy Williams, a former New York State prison inmate

who is proceeding *pro se* and *in forma pauperis*, has commenced this civil rights action pursuant to 42 U.S.C. § 1983 against various defendants alleging that while incarcerated he was subjected to constitutional deprivations as well as violations of federal law.  In his complaint the plaintiff, who suffers from both physical and mental impairments, asserts an array of claims related to defendants' treatment of him, including their failure to provide him with proper footwear and orthopedic inserts and forcing him to perform manual labor despite his ankle and foot condition; the issuance of a misbehavior report, allegedly in retaliation for exercising his constitutional right to file grievances; and treatment received generally at the facility, including in the mental health unit.  In his complaint, *inter alia*, plaintiff seeks recovery of compensatory damages in the amount of $765,000.

Following the close of discovery, defendants have moved seeking the entry of judgment on the pleadings dismissing plaintiff's complaint in its entirety.  Defendants' motion is predicated upon several grounds, including their alleged entitlement to qualified immunity from suit.  Having carefully considered plaintiff's allegations in the light of arguments raised in defendants' motion, which plaintiff has not opposed, I find that with one

exception, he has failed to set forth a cognizable civil rights claim, and therefore recommend that defendants' motion for judgment on the pleadings be granted and all of plaintiff's claims except his retaliation cause of action against defendant Brodt be dismissed.

## I.     BACKGROUND[1]

Plaintiff, a veteran of the United States Military Service, suffers from a foot, ankle and arch condition of an undisclosed nature; degenerative disc disease; and manic depression, or bipolar disorder.  Complaint (Dkt. No. 1) ¶¶ 14, 16-17, 28, 39.  At the times relevant to his claims in this action, Williams was a prison inmate entrusted to the custody of the New York Department of Correctional Services ("DOCS"), and was designated to the Mid-State Correctional Facility ("Mid-State"), located in Marcy, New York.  *Id.* ¶¶ 2-3, 25.

---

[1]     In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).  Portions of the background description which follow have been derived from the exhibits attached to plaintiff's complaint, which may also properly be considered in connection with a dismissal motion.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960, 112 S. Ct. 1561 (1992); *see also Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

Among the claims asserted by the plaintiff are those related to the alleged failure of prison officials to provide him with proper footwear with orthopedic inserts while at Mid-State.  Complaint (Dkt. No. 1) ¶¶ 28-38. Plaintiff also maintains that he was forced by prison officials, including defendant Zagby, a corrections officer, to perform manual labor despite experiencing pain caused by his foot and ankle condition.  *Id.* ¶¶ 36, 43.

Plaintiff's efforts at Mid-State to secure proper footwear commenced shortly after his transfer in December of 2005 into the facility from the Oneida Correctional Facility.  *See* Complaint (Dkt. No. 1) ¶ 25.  Following that transfer, in response to his complaints that he had not been provided footwear, plaintiff was told by prison officials to have his feet measured by the state shop.  *Id* ¶ 26.  On December 30, 2005 plaintiff met with Ms. Renninger, the state shop supervisor, who measured plaintiff's feet and recorded his left foot as size 13.5 AA and his right foot as size 13 AA.  *Id.* ¶ 26 and Exh. 9.  Since footwear in those sizes was not readily available, plaintiff was temporarily provided with size 14EE boots which, not surprisingly, did not fit quite properly.  *Id.*  ¶¶ 26-27 and Exh. 10.  As a result, plaintiff was required to choose between walking in slightly oversized boots or barefoot, and was unable to participate in certain

4

prison programs and activities, including sports and recreation. *Id.* ¶¶ 27-30.

In addition to receiving boots that did not fit, plaintiff additionally requested but was denied new orthopedic inserts for his shoes. Complaint (Dkt. No. 1) ¶ 29 and Exh. 10.  Plaintiff's need for orthopedic inserts was the result of his having undergone left lateral ankle stabilization surgery in January of 1996, requiring such devices to alleviate his foot, ankle and arch pain. *Id.* Exh. 12.  While plaintiff apparently was fitted with orthopedic inserts, they were ineffective when used in conjunction with his size 14EE boots.  *Id.* Exh. 10.

Plaintiff alleges that both defendant Kenneth Perlman, as the superintendent at Mid-State, and defendant Brodt, a nurse at the facility, were aware of his foot, ankle and arch conditions and the failure of prison officials to provide him with proper footwear.  *See, e.g.* Complaint (Dkt. No. 1) ¶ 35.  Plaintiff wrote to Superintendent Perlman concerning the issue on January 5, 2006; in response, defendant Perlman wrote to the plaintiff advising that he would look into the matter.  *Id.* ¶ 33 and Exhs. 10, 11.  A memorandum was issued on January 10, 2006 from Rosemary Reed, the Head Account Clerk at Mid-State, advising plaintiff that in

5

response to his letter to the superintendent an investigation had been conducted, and a decision was made to issue him a pair of special order boots, and the order for those boots was then being processed.  *Id.* Exh. 11.

On May 18, 2006, not having received either the special order boots or having been fitted for boots and sneakers with custom orthopedics for his feet, plaintiff again wrote to Superintendent Perlman complaining of the matter.  Complaint (Dkt. No. 1) Exh. 10.  That letter was augmented by correspondence dated March 23, 2006, from one of plaintiff's treating physicians, Dr. Frank Caruso, to Deputy DOCS Commissioner Dr. Lester N. Wright, describing the surgery performed on plaintiff's ankle in January, 1996 and emphasizing the necessity for custom orthopedic devices in order to avoid aggravation of plaintiff's ankle and foot condition.[2]  *Id.* Exh. 12.

Nurse Brodt encountered the plaintiff on April 13, 2006, when he reported to sick call complaining of left ankle pain caused by a fall the previous day.  Complaint (Dkt. No. 1) ¶ 41 and Exh. 13.  Plaintiff

---

[2]       There is no indication from the record now before the court as to whether, and if so when, plaintiff received either his specially ordered boots or custom orthotics fitted to his size 14EE boots.

6

described the incident as having occurred while he was leaving the second floor of his housing unit, at which time while descending the stairs his ankle "gave way and his arches stretched, straining his lower back." *Id.* ¶ 40.  According to plaintiff, defendant Brodt responded by warning Williams that if he "[kept] on coming to sick call about the same foot problems, [she] would write [him] up for 'misuse of the sick call process.'" *Id.* ¶ 35.

Plaintiff was in fact subsequently issued an inmate misbehavior report, dated April 13, 2006, prepared by Nurse Brodt and accusing him of failing to report an injury promptly (Disciplinary Rule 118.23), creating a disturbance with loud talking in the hallway (Disciplinary Rule 104.13), making threats (Disciplinary Rule 102.10), and providing misleading information (Disciplinary Rule 107.20).  Complaint (Dkt. No. 1) ¶ 45 and Exh. 13.  In the misbehavior report, defendant Brodt noted that while plaintiff reported to sick call on the morning of April 13, 2006, complaining of ankle pain, Williams failed to report the injury to appropriate corrections officials.  *Id.*

A disciplinary hearing was subsequently held on April 16, 2006 to address the misbehavior report.  Complaint (Dkt. No. 1) ¶ 46 and Exh. 14.

At the hearing, plaintiff was found guilty of creating a disturbance, but exonerated on the remaining three charges set forth in the misbehavior report. *Id.* Though somewhat difficult to discern from the complaint and exhibits, it appears that a penalty consisting principally of thirty days of keeplock confinement in the facility's special housing unit ("SHU") was imposed, although deferred for a period of ninety days, as a result of the hearing officer's finding of guilt.[3] *Id.*

Another aspect of plaintiff's complaint concerns actions of defendant Tina Procopio, a counselor assigned to assist inmates including those who like the plaintiff had been designated to a therapeutic residential program for veterans. *See* Complaint (Dkt. No. 1) ¶¶ 11, 47-51. Plaintiff alleges that defendant Procopio, who also oversees use of video

---

[3] Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and depriving him or her of participation in normal prison activities. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998) (citing *Gittens*); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia, Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)). Inmate conditions while keeplocked are substantially the same as in the general population. *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998). While on keeplock confinement an inmate is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise. *Id.* Keeplocked inmates can leave their cells for showers, visits, medical exams and counseling, and can have cell study, books and periodicals, *Id.* The primary difference between keeplock and the general population confinement conditions is that keeplocked inmates do not leave their cells for out-of-cell programs, and are usually allowed less time out of their cells on the weekends. *Id.*

conferencing facilities at Mid-State, overheard and later disclosed

confidential information exchanged between the plaintiff and his attorney,

and that she, acting in concert with other employees and inmates, has

engaged in a campaign to force the plaintiff out of the unit.  *Id.* ¶¶ 47-62.

Plaintiff's complaints regarding Procopio were the subject of both a

grievance filed on April 11, 2006, and pursued to completion through the

available, internal DOCS grievance process, and a letter sent on April 17,

2006 by the plaintiff to then-DOCS Commissioner Glenn Goord.

Complaint (Dkt. No. 1) ¶¶ 59-61 and Exh. 19.

II.    <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on August 2, 2006.  Dkt. No. 1.  As

defendants, plaintiff's complaint named Mid-State Superintendent

Perlman; Mid-State Assistant Deputy Superintendent McDaniels; Senior

Corrections Counselor Joslyn; Corrections Officer Zagby; J. Morgan,

described as the unit chief of the Mid-State mental health unit ("MHU");

Nurse Practitioner Sergio; Social Worker Johnson; Registered Nurse

Brodt; and Corrections Counselor Procopio.[4]  In his complaint plaintiff

---

[4]       Also originally named as defendants in plaintiff's complaint were the Mid-State Correctional Facility and the Central New York Psychiatric Center.  Dkt. No. 1 ¶¶ 3-4. Those entities, however, were dismissed from the case by order issued by the court, *sua sponte*, on August 5, 2006.  Dkt. No. 8.

asserts a variety of claims, including under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as well as claiming that he was subjected to deliberate indifference and cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution, and unlawful retaliation, in contravention of the First Amendment.  Typical of plaintiff's claims against the various individuals are assertions of "failure to train", "conspiracy", "breach of fiduciary duty", "negligent supervision", "negligent hiring" and "respondeat superior".  *See generally* Complaint (Dkt. No. 1) ¶¶ 85-95.   The defendants remaining in the case have filed answers to plaintiff's complaint generally denying its material allegations and interposing various defenses.  Dkt. Nos. 36, 45.

On March 14, 2008 defendants moved seeking the entry of judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, urging dismissal of plaintiff's complaint on a variety of bases, contending that 1) plaintiff's negligence claims are not cognizable under section 1983; 2) plaintiff's allegations, even if proven, are insufficient to sustain a claim of deliberate indifference toward plaintiff's serious medical needs; 3) plaintiff's allegations regarding conspiracy are

unduly vague and fail to support a cognizable claim; 4) plaintiff's privacy

claims do not arise to a level of constitutional significance; 5) plaintiff's

claims under the ADA and Rehabilitation Act are legally insufficient, since

no individual liability lies under those sections; 6) plaintiff's false

misbehavior reports do not support a constitutional claim; 7) plaintiff's

retaliation claims have been insufficiently pleaded; 8) plaintiff's cruel and

unusual punishment and unconstitutional customs and policies claims are

facially lacking in merit; and 9) in any event defendants are entitled to

qualified immunity from suit.  Defendants' motion, to which plaintiff has

failed to respond, is now ripe for determination and has been referred to

me for the issuance of a report and recommendation pursuant to 28

U.S.C. 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).

*See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

 A.   Legal Significance of Plaintiff's Failure to Respond

 While defendants have sought dismissal of plaintiff's complaint on a

variety of grounds, plaintiff has not provided the court with the benefit of

any argument as to why that motion should not be granted.  As a

threshold matter I first address the significance of this shortcoming, and

11

specifically whether it automatically entitles the defendants to the dismissal which they now seek.

At the outset, it should be noted that the fact that plaintiff has failed to oppose defendants' motion for judgment on the pleadings does not preclude the court from deciding the motion without the benefit of his submission.   *See, e.g., White v. Mitchell,* No. 99-CV-8519, 2001 WL 64756, at *1 (E.D.N.Y. Jan. 18, 2001).  Like motions to dismiss, a motion for judgment on the pleadings tests only the legal sufficiency of the plaintiff's complaint; accordingly, while a party faced with such a motion should be given reasonable opportunity to respond to such a motion, the court is fully capable of determining the issue of legal sufficiency of the plaintiff's claims as a matter of law based on its own reading of the complaint and knowledge of the relevant case law.  *McCall v. Pataki,* 232 F.3d 321, 322-23 (2d Cir. 2000).

Under this court's local rules, a party's failure to respond to a properly filed motion is regarded as the functional equivalent of consent to the granting of the motion; before such an unopposed motion may be granted, however, the court must first make a threshold finding that the moving party has met its burden of facially demonstrating entitlement to

12

the relief requested.   N.D.N.Y.L.R. 7.1(b)(3); *see also McCall*, 232 F.3d at

322-23 (holding that plaintiff's failure to respond to a motion to dismiss in

and of itself could not constitute basis for dismissal if plaintiff's complaint

stated a claim for relief); *White*, 2001 WL 64756, at n.2 (citing *McCall*).

    B.    <u>Standard of Review</u>

Defendants' motion is brought pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure, which governs the entry of judgment on the

pleadings.[5]  When analyzing a Rule 12(c) motion, a court must apply the

same standard as that applicable to a motion under Rule 12(b)(6).  *See,*

*e.g.*, *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994); *Wynn v.*

*Uhler*, 941 F. Supp. 28, 29 (N.D.N.Y. 1996) (Pooler, J.).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept

the material facts alleged in the complaint as true, and draw all inferences

---

    [5]    Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Rule 12(d) further mandates that:

> [i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

in favor of the non-moving party.  *Cooper v. Pate*, 378 U.S. 546, 546, 84

S. Ct. 1733, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d

292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003);

*Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).

The burden undertaken by a party requesting dismissal of a complaint

under Rule 12(b)(6) is substantial; the question presented by such a

motion "is not whether [the] plaintiff is likely to prevail ultimately, 'but

whether the claimant is entitled to offer evidence to support the claims.'"

*Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d

435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69

F.3d 669, 673 (2d Cir. 1995)) (citations and quotations omitted).

Accordingly, a complaint should be dismissed on a motion brought

pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide

some basis for the allegations that support the elements of his or her

claim.  *See Twombly*, 127 S. Ct. at 1969, 1974; *see also Patane v. Clark*,

508 F.3d 106, 111-12 (2d Cir. 2007) ("In order to withstand a motion to

dismiss, a complaint must plead 'enough facts to state a claim for relief

that is plausible on its face.'") (quoting *Twombly,* 127 S. Ct. at 1974*)*.

"While *Twombly* does not require heightened fact pleading of specifics, it

14

does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action.  *Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976)) ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (internal quotations omitted); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend] when justice so requires.").

<u>     C.      Deliberate Indifference to Serious Medical Need</u>

15

Plaintiff's complaint centers principally upon the failure of prison officials at Mid-State to provide him with adequate footwear to meet his medical condition.  In their motion, defendants challenge plaintiff's ability to demonstrate that his foot and ankle condition constitutes a serious need sufficient to invoke Eighth Amendment protection.

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must satisfy the lynchpin requirement of alleging a deprivation involving a medical need which is, in objective terms, "'sufficiently serious'".  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991)), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain'."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted).  A serious medical need can also exist where "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'"; since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts*.  Harrison v. Barkley*, 219 F.3d

16

132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*).

To prove the existence of such a serious medical need a plaintiff
need not establish that he is facing imminent death, but must establish
more than a "condition[ ] which many people suffer from and function
despite on a daily basis." *Davidson v. Scully*, 914 F. Supp. 1011, 1015
(S.D.N.Y. 1996).  Relevant factors informing this determination include
whether the plaintiff suffers from an injury that a "'reasonable doctor or
patient would find important and worthy of comment or treatment'", a
condition that "'significantly affects'" a prisoner's daily activities, or causes
"'chronic and substantial pain.'"  *Chance*, 43 F.3d at 701 (citation omitted);
*LaFave v. Clinton County*, No. CIV. 9:00CV774, 2002 WL 31309244, at
*2-*3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.).

Plaintiff's deliberate indifference claims in this action surround the
alleged exacerbation of a pre-existing foot, ankle and arch condition,
which required surgery in January of 1996.  Following the surgery, plaintiff
was issued custom-made orthopedic devices, designed to alleviate his
pain when walking.  *See* Complaint (Dkt. No. 1) Exh. 12. Plaintiff contends
that the effectiveness of his orthopedic devices was seriously undermined,
following his transfer into Mid-State, since he was issued excessively large

17

footwear.  *Id.* Exh. 10.  According to Williams, wearing the wrong sized shoes created "intense pain on [his] toes and arches", and caused him to develop painful callouses which needed to be "lanced from [his] feet."  *Id.*

Despite these allegations, there is nothing in plaintiff's complaint to suggest that his foot, ankle and arch condition presented a question of urgency resulting in degeneration or extreme pain.  Accordingly, based upon a survey of plaintiff's complaint and the attached materials, I conclude that plaintiff has not alleged the existence of a constitutionally cognizable serious medical need.  *See Veloz v. New York,* 35 F. Supp. 2d 305, 309, 312 (S.D.N.Y. 1999) (prisoner's foot condition, which involved increasing pain and required surgery, was not sufficiently serious); *Alston v. Howard,* 925 F. Supp. 1034, 1040 (S.D.N.Y. 1996) (prisoner's ankle condition and resulting foot pain requiring the use of special footwear was not sufficiently serious); ; *see also Gill v. Frawley*, No. 9:02-CV-1380 (TJM/GHL), 2006 WL 1742738, at *7 n. 32 (N.D.N.Y. June 22, 2006 (collecting cases).

Because plaintiff's complaint fails to disclose a plausible basis to find the existence of a serious medical condition for Eighth Amendment purposes, I recommend that plaintiff's medical indifference claim be

dismissed, though with leave to replead in light of his *pro se* status.  *See Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991).

D.    Cruel and Unusual Punishment

In broad and general terms, plaintiff alleges that the conduct of defendants Perlman, Morgan, Johnson and Zagby constituted cruel and unusual punishment.  *See generally* Complaint (Dkt. No. 1) ¶¶ 85, 89, 92-93.  In their motion for judgment on the pleadings, those defendants also challenge the legal sufficiency of plaintiff's claims of cruel and unusual punishment against them, asserting that plaintiff's non-specific statements are insufficient to state a claim under section 1983.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject

to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832,

114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337,

349, 101 S. Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment

must satisfy both an objective and subjective requirement – the conditions

must be "sufficiently serious" from an objective point of view, and the

plaintiff must demonstrate that prison officials acted subjectively with

"deliberate indifference."  *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546

(N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S.

Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at

*2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also,*

*generally, Wilson*, 501 U.S. 294, 111 S. Ct. 2321.  Deliberate indifference

exists if an official "knows of and disregards an excessive risk to inmate

health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S.

Ct. at 1978; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998

WL 713809, at *2 (same).

As the Second Circuit has noted, "to state a civil rights claim under

20

§1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under §1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987).   In this instance, aside from the conclusory allegations of cruel and unusual punishment, plaintiff's complaint is devoid of any specifics or factual recitations describing conditions which could support a plausible claim of cruel and unusual punishment.  The only reference in plaintiff's complaint to a specific condition which, he contends, was tantamount to cruel and unusual punishment, concerns defendant Zagby's directive that he perform three hours of work requiring him to remain on his feet despite the pain which he was experiencing in his ankles and feet.  *See* Complaint (Dkt. No. 1) ¶ 36.  Such a modest allegation is insufficient to support a claim of cruel and unusual punishment.  *Compare Gaston v. Coughlin*, 249 F.3d 156, 164-65 (2d Cir. 2001) (finding that prisoner's allegations that he had been exposed to freezing and sub-zero temperatures in his cellblock during the winter months, and was exposed to unsanitary conditions including mice, human feces, urine, and sewage water, were sufficient to support his claim of cruel and unusual punishment).

21

Given plaintiff's failure to allege facts to support a plausible claim of cruel and unusual punishment, I recommend dismissal of this cause of action as well, again with leave to replead.

E.    Conspiracy

In his complaint, plaintiff includes bald allegations of "conspiracy" against defendants McDaniels, Joslyn, Morgan, Procopio, Johnson and Zagby.  Complaint (Dkt. No. 1) ¶¶ 87-89, 91-93.  Aside from identifying the participants in the conspiracy, however, plaintiff makes no further assertions in support of the claim, and specifically fails to allege any facts which would reflect a meeting of the minds, or details regarding its objective.

To sustain a conspiracy claim under § 42 U.S.C. 1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts." *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (citations and internal quotation marks omitted).  Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983.  *See Sommer v. Dixon*, 709

22

F.2d 173, 175 (2d Cir.), *cert. denied*, 464 U.S. 857, 104 S. Ct. 177 (1983).

When measured against this standard, it is readily apparent that plaintiff's conspiracy claims are sufficiently lacking in detail as to warrant dismissal.  *Warren v. Fischl*, 33 F. Supp.2d 171, 177 (E.D.N.Y. 1999). Accordingly, I also recommend that the portion of defendants' motion addressing plaintiff's conspiracy claims be granted, with leave to replead.[6]

F.    Retaliation

Embedded within plaintiff's complaint is a cause of action against defendant McDaniels for retaliation.  Complaint (Dkt. No. 1) ¶ 87.   The complaint also intimates that plaintiff claims to have experienced retaliation on the part of defendant Brodt, based upon her issuance of the April 13, 2006 misbehavior report, although the summary portion of his complaint outlining the causes of action plaintiff, while referring to that defendant's "falsifying disciplinary records", does not specifically reference the term retaliation.  *See* Complaint (Dkt. No. 1) ¶¶ 45, 90.  In their motion defendants maintain that such a retaliation claim, which is particularly

---

[6]      Even had the plaintiff properly alleged a plausible claim of conspiracy, under the circumstances now presented it would In all likelihood be precluded by the intra-agency conspiracy doctrine.  *See, e.g., Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 75-76 (E.D.N.Y. 2002); *Griffin-Nolan v. Providence Washington Ins. Co.*, No. 5:05CV1453, 2005 WL 1460424, at *10-11 (N.D.N.Y. June 20, 2005) (Scullin, C.J.); *see also Little v. City of New York*, 487 F. Supp. 2d 426, 441-442 (S.D.N.Y. 2007).

23

prone to abuse by prison inmates, does not lie against defendant
McDaniels, given the allegations set forth in plaintiff's complaint, but do
not address the potential retaliation cause of action stated against
defendant Brodt.

When adverse action is taken by prison officials against an inmate,
motivated by the inmate's exercise of a right protected under the
Constitution, including the free speech provisions of the First Amendment,
a cognizable retaliation claim under 42 U.S.C. § 1983 lies.  *See Franco v.
Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).  As the Second Circuit has
repeatedly cautioned, however, such claims are easily incanted and
inmates often attribute adverse action, including the issuance of
misbehavior reports, to retaliatory animus; courts must therefore approach
such claims "with skepticism and particular care."  *Dawes v. Walker*, 239
F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13
(2d Cir. 1983)), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,*
534 U.S. 506 (2002); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)
(same).

In order to state a *prima facie* claim under section 1983 for
retaliatory conduct, a plaintiff must advance non-conclusory allegations

24

establishing that 1) the conduct at issue was protected; 2) the defendants

took adverse action against the plaintiff; and 3) there was a causal

connection between the protected activity and the adverse action – in

other words, that the protected conduct was a "substantial or motivating

factor" in the prison officials' decision to take action against the plaintiff.

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97

S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007);

*Dawes*, 239 F.3d at 492 (2d Cir. 2001).  If the plaintiff carries this burden,

then to avoid liability the defendants must show by a preponderance of the

evidence that they would have taken action against the plaintiff "even in

the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at 287,

97 S. Ct. at 576.  If taken for both proper and improper reasons, state

action may be upheld if the action would have been taken based on the

proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.

1996) (citations omitted).

A careful review of plaintiff's complaint fails to review any specifics

regarding the retaliation claim, which is set forth in wholly conclusory

fashion against defendant McDaniels.  While there are several references

in plaintiff's complaint to the filing of grievances, Williams does not identify

which among them, if any, represent the protected activity that purportedly triggered retaliatory measures taken against him.  Similarly, plaintiff's complaint does not disclose what adverse action was taken which, he maintains, is attributable to his protected activity, nor does he provide any specifics regarding the nexus between the two.  Under the circumstances, plaintiff's claim of retaliation against defendant McDaniels is impermissibly vague and does not disclose the existence of a plausible cause of action for retaliation.  *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *see also Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983).  I therefore recommend dismissal of this claim as well, again with leave to replead.  *See Flaherty*, 713 F.2d at 13.

The same cannot be said with respect to plaintiff's potential retaliation claim against defendant Brodt.  In his complaint, plaintiff alleges that in response to the filing of a grievance, defendant Brodt authored a misbehavior report charging Williams with four prison rule violations. Complaint (Dkt. No. 1) ¶¶ 44-46.  While the factual reiterations in plaintiff's complaint do not pointedly assert that the misbehavior report was false, his contention to that effect can reasonably be inferred from his statement in the claims portion of the complaint accusing Nurse Brodt of "falsifying

disciplinary reports." *Id.* ¶ 90.  Since the filing of a false misbehavior report in retaliation for engaging in protected activity could represent unlawful retaliation in violation of the First Amendment, plaintiff's complaint states a plausible cause of action for retaliation as against defendant Brodt.  *Franco,* 854 F.2d at 589.  I therefore recommend against dismissal of that claim.

> G.    Plaintiff's Privacy Claim

In a similarly summary fashion, plaintiff alleges that defendants McDaniels and Procopio abridged his right to privacy, including under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Pub. L. 104-191, 110 Stat. 1936.  Complaint (Dkt. No. 1) ¶¶ 87, 91.  Though this is far from clear, it appears that at least with regard to defendant Procopio, the claim relates to her having informed other corrections workers and inmates of plaintiff's psychiatric condition and treatment.[7]  *Id.* ¶ 49.

> 1.    Right of Privacy Generally

---

[7]    Plaintiff's privacy claim against defendant McDaniels appears to be derivative of his claim against defendant Procopio, and based upon the contention that by virtue of his position as Assistant Deputy Superintendent for the programs, defendant McDaniels "had constructive knowledge" regarding defendant Procopio's behavior.  *See, e.g.,* Complaint (Dkt. No. 1) ¶ 53.

In *Doe v. City of New York*, the Second Circuit recognized a right of privacy enshrouding information to the effect that a person has been infected with the human immunodeficiency virus ("HIV").  15 F.3d 264, 267 (2d Cir. 1994).  In recognition of the inherently private nature of certain conditions, including HIV positive status, and the attendant risk of embarrassment and ridicule for a person whose intimately private condition becomes known, the court in *Doe*  "constitutionalized" a right of privacy with respect to such information under the umbrella of the due process clause of the Fourteenth Amendment.  *Id.*; *see Powell v. Shriver*, 175 F.3d 107, 112 (2d Cir. 1999).

While prison inmates are divested of many significant constitutional rights as a result of their status, the limited right of privacy recognized in *Doe* has been extended to cover medical information regarding prison inmates, and in particular that which discloses certain types of medical conditions.  *See Powell*, 175 F.3d at 112-13 (citing *Doe*).  Under the protections afforded by this limited right, "a prisoner's interest in keeping a medical condition private varies with the condition."  *Rodriguez v. Ames*, 287 F. Supp. 2d 213, 220 (W.D.N.Y. 2003) (citing *Powell*, 175 F.3d at 111).  This narrow constitutional right applies in the case of an unusual

28

medical condition which, if disclosed unnecessarily, would likely expose an inmate to ridicule, discrimination, or even potentially violence, particularly when the word of the condition is likely to spread through "humor or gossip[.]"  *Powell,* 175 F.3d at 112; *Rodriguez*, 287 F. Supp. 2d at 220; *see also Leon v. Johnson*, 96 F. Supp. 2d 244, 252 (W.D.N.Y. 2000). Conditions found sufficient to have triggered this qualified right of privacy include HIV positive status, as well as transexualism.  *Powell*, 175 F.3d at 112-13 (transexualism); *Doe*, 15 F.3d at 266-67 (HIV positive).

     *Powell* and the relative few cases in this circuit which have addressed the issue of disclosure of a prison inmate's medical information disclose the relatively narrow confines of the cause of action of which plaintiff now seeks to avail himself.  The cases in which the unauthorized disclosure of prison medical information has been found to give rise to liability involve inmates with unknown conditions which, if publicized, would subject the inmate to harassment, shame or ridicule.  *Powell*, 175 F.3d at 112-13; *contrast Rodriguez*, 287 F. Supp. 2d at 220-21; *Leon*, 96 F. Supp. 2d at 252.  Those cases also reveal that the liability inquiry is informed by whether legitimate penological interests are at stake when the disclosure is made.  *See Powell*, 175 F.3d at 112-13; *Rodriguez*, 287 F.

Supp. 2d at 220-21; *Leon*, 96 F. Supp. 2d at 252.  Thus, for example, the

disclosure by prison officials of an inmate's medical information to law

enforcement for purposes of an ongoing investigation does not give rise to

liability.  *Webb v. Goldstein*, 117 F. Supp.2d 289, 298-99 (E.D.N.Y. 2000);

*contrast Powell*, 175 F.3d at 112 ("[G]ratuitous disclosure of an inmate's

confidential medical information as humor or gossip . . . is *not* reasonably

related to a legitimate penological interest, and it therefore violates the

inmates constitutional right to privacy.") (emphasis in original; footnote

omitted)*.*

In this instance plaintiff's complaint, even under the most generous

construction, fails to allege the existence of any condition of such a

magnitude or nature as to place it on par with HIV positive status or

transexualism which was disclosed indiscriminately to non-medical

personnel.  Under the circumstances, plaintiff's right to privacy claims

under the due process clause of the Fourteenth Amendment are subject

to dismissal.

### 2.   HIPAA

The HIPAA was enacted by Congress in order to protect against

unwarranted disclosure of health records and information, authorizing the

Secretary of Health and Human Services "to make final regulations concerning the privacy of individually identifiable health information." *Barnes v. Glennon,* No. 05-CV-0153, 2006 WL 2811821, at *5 (Sept. 28, 2006) (citing and quoting *Nat'l Abortion Fed'n v. Ashcroft,* No. 03 Civ. 8695, 2004 WL 555701, at *2 (S.D.N.Y. Mar. 19, 2004) and 42 U.S.C. §§ 1320d through 1320d-8).  Courts which have addressed claims similar to those now raised have determined that in light of the availability of monetary and criminal penalties to be assessed by the Secretary of Health and Human Services or the State, *see* 42 U.S.C. § 1320d-6(b), the statute does not confer an independent private right of action.  *See Barnes,* 2006 WL 2811821, at *5-6; *Cassidy v. Nicolo,* No. 03-CV-6603, 2005 WL 3334523, at *5-6 (W.D.N.Y. Dec. 7, 2005); *see also Pecou v. Forensic Committee Personnel,* No. 06-CV-3714, 2007 WL 1490450, at *2 (E.D.N.Y. Jan. 5, 2007).

Under the circumstances presented, plaintiff has failed to demonstrate the existence of a private right of action under HIPAA. Similarly, plaintiff does not allege the disclosure of such inherently private and potentially embarrassing information as was involved in *Doe* and its progeny sufficient to invoke substantive due process protections.  I

therefore recommend dismissal of plaintiff's right to privacy and HIPAA claims.

> H.   Plaintiff's ADA and Rehabilitation Act Claims

In their motion, defendants also seek dismissal of plaintiff's claims under the ADA and section 504 of the Rehabilitation Act.  In support of this portion of their motion, defendants assert that no claim for liability against an individual defendant lies under either provision.

In 1990 Congress enacted the ADA pursuant to the Commerce Clause of the United States Constitution, as well as under section five of the Fourteenth Amendment.  *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 108 (2d Cir. 2001); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1006 (8th Cir. 1999) (en banc) (citing 42 U.S.C. § 12101(b)(4)); *see also Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212, 118 S. Ct. 1952, 1956 (1998).  Title II of the Act prohibits exclusion of a qualified individual with a disability "from participation in or [denial of the] benefits of the services, programs, or activities of a public entity, of from discrimination by any such entity", and extends its coverage to prisons operated by the states.  *Yeskey*, 524 U.S. at 209-210, 118 S. Ct. at 1955 (citing 42 U.S.C. § 12132).  The rights afforded to disabled

32

individuals under Title II of the Act apply to some degree, and subject to legitimate countervailing penelogical concerns, to prison inmates. *Yeskey*, 524 U.S. at 210, 118 S. Ct. at 1955.

In this instance plaintiff has asserted damage claims against the various defendants, including those named in his ADA and Rehabilitation Act claims, apparently in their capacities as individuals. Neither the ADA nor section 504 of the Rehabilitation Act, however, provides for individual capacity suits against state officials. *Garcia*, 280 F.3d at 107; *Alsbrook*, 184 F.3d at 1005 n.8; *Shariff v. Coombe*, No. 96 Civ. 3001, 2002 WL 1392164, at *2 (S.D.N.Y. June 26, 2002). I therefore recommend that plaintiff's ADA and Rehabilitation Act claims be dismissed.

I.    Negligence

The remainder of plaintiff's claims in this action are couched in such terms as negligence in hiring and supervision, breach of fiduciary duty, and *respondeat superior*. It is well-established, however, that such claims are not cognizable under section 1983. *Champion v. Artuz*, 76 F.3d 483, 487 (2d Cir. 1996) (noting that *respondeat superior* claim is not cognizable under section 1983); *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991) ("Proof of mere negligence will not give rise to a constitutional

33

violation."); *Edmond v. Babcock,* No. 91-3091-S, 1991 WL 49671, at *1

(D. Kan. Mar. 28, 1991) (indicating that plaintiff's claims for breach of

contract and fiduciary duties were not cognizable under section 1983).

Accordingly, defendants are entitled to judgment on the pleadings

dismissing those claims as well.

J.    Qualified Immunity

In their motion, defendants advance qualified immunity as an

alternative basis for dismissal of plaintiff's claims.  Because I have

recommended that one of plaintiff's claims survives the pending motion on

the merits, I will address this additional argument.

Qualified immunity shields government officials performing

discretionary functions from liability for damages "insofar as their conduct

does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457

U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citations omitted).

Accordingly, governmental officials sued for damages "are entitled to

qualified immunity if 1) their actions did not violate clearly established law,

or 2) it was objectively reasonable for them to believe that their actions did

not violate such law."  *Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999)

34

(citing *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996));  *see also Zellner v.*

*Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007);  *Iqbal v. Hasty*, 490 F.3d

143 (2d Cir. 2007).  The law of qualified immunity seeks to strike a

balance between overexposure by government officials to suits for

violations based upon abstract rights and an unduly narrow view which

would insulate them from liability in connection with virtually all

discretionary decisions.  *Locurto v. Safir*, 264 F.3d 154, 162-63 (2d Cir.

2001);  *Warren*, 196 F.3d at 332.  As the Second Circuit has observed,

> [q]ualified immunity serves important interests in our
> political system, chief among them to ensure that
> damages suits do not unduly inhibit officials in the
> discharge of their duties by saddling individual officers
> with personal monetary liability and harassing litigation.

*Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal

quotations omitted) (citing, *inter alia*, *Bivens v. Six Unknown Named*

*Agents of the Fed. Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir.

1972)).

Until recently, it was generally agreed that a proper qualified

immunity analysis entailed a three step inquiry.  *Harhay v. Town of*

*Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003).  As a threshold

matter a court considering the issue was charged with first determining

whether, based upon the facts alleged, the plaintiff had facially established a constitutional violation.  *Id.*; *Gilles v. Repicky*, 511 F.3d 239, 243-44 (2d Cir. 2007).  If the answer to this inquiry was in the affirmative, then the focus turned to whether the right in issue was clearly established at the time of the alleged violation.  *Id.*  (citing *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001));  *see also Poe v. Leonard*, 282 F.3d 123, 132-33 (2d Cir. 2002).  Finally, upon determining that the plaintiff had a clearly established, constitutionally protected right which was violated, the court next considered whether it was nonetheless objectively reasonable for the defendant to believe that his or her action did not abridge that established right.  *Harhay*, 323 F.3d at 211; *Poe*, 282 F.3d at 133 (quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (quoting, in turn, *Salim*, 93 F.3d at 89)).

The United States Supreme Court recently had the opportunity to reconsider the analysis prescribed by *Saucier*, holding that while the sequence of the inquiry set forth in that case is often appropriate, it should no longer be regarded as compulsory.  *Pearson v. Callahan*, 555 U.S. ___, __ S. Ct. __, 2009 WL 128768, at *9 (Jan. 21, 2009).  In *Pearson*, the Court reasoned that while the *Saucier* protocol promotes the development

36

of constitutional precedent and is "especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable," the rigidity of the rule comes with a price. *Id.* at *10.  The inquiry often wastes both scarce judicial and party resources on challenging questions that have no bearing on the outcome of the case. *Id.*  Given that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Court opined that the algorithm prescribed by *Saucier* may serve to defeat this goal by requiring the parties "to endure additional burdens of suit – such as the cost of litigating constitutional questions and delays attributable to resolving them – when the suit otherwise could be disposed of more readily." *Id*. (quotations and citations omitted).

     As a result of its reflection on the matter, the *Pearson* Court concluded that because the judges of the district courts and courts of appeals "are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the . . . prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the

particular case at hand." *Id.* at *9.

Since I have already concluded that plaintiff's complaint does not state plausible constitutional claims, with the exception of a retaliation cause of action alleged against defendant Brodt, it is unnecessary to continue further with the qualified immunity analysis with regard to those claims. Turning to the retaliation cause of action I note, having already found that a plausible constitutional violation has been alleged, that the First Amendment right in issue to be free from retaliation, in return for having engaged in protected activity, was clearly established at the time of the alleged violation in April of 2006. *Rivera v. Senkowski*, 62 F.3d 80, 85 (2d Cir. 1995) (citing *Franco*, 854 F.2d at 589-90). From the limited record now before the court, I discern no basis to conclude that defendant Brodt would have been reasonable in her belief that the issuance of an allegedly false misbehavior report, in retaliation for Williams having engaged in protected activity in the form of filing grievances, did not violate plaintiff's First Amendment rights. Accordingly, I recommend a finding that defendant Brodt is not entitled to qualified immunity from suit. *See id.* at 85-86.

## IV.   SUMMARY AND RECOMMENDATION

Plaintiff's complaint, the substance of which defendants now challenge as failing to set forth a plausible constitutional or federal statutory claim, recites various offending conduct in largely conclusory fashion, and asserts a broad array of claims against the several defendants named.  Plaintiff's primary claim, which relates to the alleged failure of the defendants to accommodate his medical needs, is legally deficient in that he has failed to allege the plausible existence of a sufficiently serious medical condition of constitutional proportions.  With the exception of a retaliation cause of action against defendant Brodt, which I find has been sufficiently alleged, the balance of plaintiff's claims are deficient on a variety of grounds, including the fact that there is no private right of action under the ADA, section 504 of the Rehabilitation Act, and the HIPAA, several of the provisions cited by the plaintiff as forming a basis for his claims, and further in light of the fact that no claims lie under section 1983 for negligence, breach of fiduciary duty, or under a *respondeat superior* theory.  Based upon these deficiencies, I recommend that all of plaintiff's claims with the exception of his retaliation claim against defendant Brodt be dismissed, though with leave to replead in deference to his *pro se* status.  Based upon the foregoing it is hereby

39

respectfully

RECOMMENDED, that defendants' motion for judgment on the pleadings (Dkt. No. 63) be GRANTED, in part, and that all of the claims set forth in plaintiff's complaint (Dkt. No. 1), with the exception of plaintiff's retaliation cause of action against defendant Brodt, be DISMISSED, with leave to replead,

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.


Dated:       February 5, 2009
             Syracuse, NY

David E. Peebles
U.S. Magistrate Judge


40